In the Interest of N.S. and
D.S. Juveniles.

The Juvenile Office of Missouri,
Plaintiff/Respondent,

v.

Gene Schmidt, Defendant/Appellant.

No. ED 80336.

Missouri Court of Appeals,
Eastern District,
Division One.

April 30, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 2002.

Bianca L. Eden, Hillsboro, MO, for appellant.

John Appelbaum, Arnold, for Guardian ad Litem.

Susan K. Nuckols, Hillsboro, MO, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Father, Gene Schmidt, appeals from the judgment of the trial court terminating his parental rights to his two children, N.S. and D.S.[1] We reverse and remand.

The children, N.S., a girl, and D.S., a boy, were twins born on January 18, 1999. Appellant was their biological father. On May 3, 2000, the Juvenile Officer filed a petition for corrective treatment, alleging jurisdiction under section 211.031.1 RSMo 2000, in that each child was "without proper care, custody, and support in that on or about May 1, 2000, the mother operated a motor vehicle containing the juvenile in an unsafe manner, while under the influence of alcohol or another substance which impaired her ability to safely operate the vehicle. Further, the juvenile was filthy, and infected with ticks."

On May 10, 2000, a protective custody hearing was held. Both parents were present without counsel. The court ordered the children to be placed in the temporary physical custody of the Division of Family Services (DFS).

After a hearing on July 10, 2000, the court entered a finding of jurisdiction under section 211.031.1. The court ordered the parents to undergo urinalysis before allowing visitation and to comply with the terms of the service agreements submitted by DFS. Neither parent was present at the hearing.

On October 17, 2000, a dispositional review hearing was held and both parents appeared without counsel. Based on a financial statement submitted by father, the court ordered him to pay $10.00 per month for child support.

On January 9, 2001, father filed an application for a court-appointed attorney. In that application he stated that he was unemployed, had no income from employment, and no income from any other source. He did not, however, fill in every blank on the application. That same day, the court denied father's application without an evidentiary hearing and without specifying its reason for doing so.

The court held other hearings: one on January 29, 2001, at which neither parent appeared; and another on May 1, 2001, at which father appeared without counsel. On July 3, 2001, the Juvenile Officer filed petitions to terminate both parents' parental rights to both children. On July 6, 2001, the first hearing on the petitions to terminate parental rights was held and father was present. The hearing on the petition to terminate parental rights was set for October 5, 2001.

On July 10, 2001, father filed his second request for a court-appointed attorney. In that application, he stated that he presently had no salary but would receive $20.70 per hour on a job he "just started[.] Depends on work and weather[.] Local 718 still owe $450 for union card[.]" He also stated that his income from the previous year was "under [$]5000" and that he "didn't make enough to file [an income tax return]." The court again denied father's application, without an evidentiary hearing, stating, "Parent *not* indigent."

On October 5, 2001, the court held an evidentiary hearing on the petitions to terminate the parental rights. The Juvenile Officer called the DFS caseworker as its only witness. The Guardian ad Litem recommended that father's parental rights be terminated. Father was present, attempted to cross-examine DFS's witness, and also testified on his own behalf.

---

1. Mother was a party to the action below and the trial court terminated her parental rights as well. She did not, however, appeal from the court's judgment as it related to her and thus is not a party to this appeal.

The court terminated father's parental rights to the children. The court found, among other things, that father had failed to comply with the written service agreement with the DFS. The court also found that there was no evidence that father "committed any deliberate act, which would subject the child to a substantial risk of physical or mental harm, or knew or should have known of such an act on the part of another." Father appeals from that judgment.

■ In his first point, father contends that the trial court erred in denying his two requests for court-appointed counsel. Father relies on Rule 116.01 and section 211.211 RSMo 2000 for his argument that he was entitled to representation at the hearing.

A parent's right to appointed counsel in juvenile proceedings is set out in Rule 116.01 and section 211.211.4. Rule 116.01, entitled "RIGHT TO COUNSEL," states, in pertinent part:

a. A party is entitled to be represented by counsel in all proceedings [in juvenile court]. . . .

d. When a petition has been filed and the juvenile's custodian appears before the court without counsel, the court shall appoint counsel for the custodian if it finds:

(1) that the custodian is indigent; and

(2) that the custodian desires the appointment of counsel; and

(3) that a full and fair hearing requires appointment of counsel for the custodian.

The language of section 211.211.4 is identical to that of Rule 116.01(d).

Section 211.211.4 and Rule 116.01(d) directed the juvenile court to appoint counsel for father if he met the statutory criteria. By filing the first application on January 9, 2001, father indicated his desire for appointed representation. On the application for court-appointed counsel, he indicated that he was unemployed, was receiving no salary, and had no other sources of income. The information supplied by father on the January 9 application appears to demonstrate that he was indigent and entitled to court-appointed counsel.

Yet, the trial court's denial of father's application was entered summarily and did not disclose its reason for so doing. There was no evidence regarding father's educational level or whether he was disabled in any way. In addition, the court had entered an earlier order for father to pay child support of only $10.00 per month, an order which lends credence to father's claim that he was indigent. Given the sparse record, it does not appear that there was an adequate determination as to whether or not father was indigent on January 9, 2001. Certainly, if father's economic circumstances changed any time after January 9, 2001, the court could have directed him to retain private counsel at that time.

The Juvenile Officer argues that father was disqualified to receive court-appointed counsel because he did not comply with the warning on the application form; to wit, "All blanks must be filled in. Incomplete applications will not be approved." The Juvenile Officer points out that father left blanks on the application, put in question marks in certain spaces, and didn't answer the question about whether he owned real estate.

Father's failure to fill in every blank on a pre-printed form, however, should not automatically preclude a finding that he was entitled to court-appointed counsel. Neither the statute nor the rule required that a pre-printed form be filled out in its entirety; the only requirement was that father meet the statutory criteria. Given that the questions answered by father appeared to qualify him as indigent and that

his application was not completely filled out, the better practice for the trial court would have been to hold a hearing to determine if father met the statutory criteria. In the instant action, the failure of the court to inquire further did not comport with the statute and the rule.

Nor did father waive his right to counsel prior to the filing of the petitions to terminate his parental rights on July 3, 2001. When the court denied his request for appointed counsel on January 9, 2001, father proceeded with the action, continuing to represent himself. These actions cannot be construed as a voluntary waiver of father's right to counsel.

Father also challenges the trial court's denial of his second request for appointed counsel on July 10, 2001, after the petitions to terminate his parental rights were filed. In view of our holding that the trial court erred in denying his first application on January 9, 2001, it is not necessary to address this issue.

The trial court erred in denying father's first request for court-appointed counsel. Father's first point is granted.

■ In his second point, father charges error in the trial court's failure to make specific findings with regard to the four factors enumerated in section 211.447.4(3) RSMo 2000 in its termination order. Because this issue is likely to arise on remand, we address it here. Section 211.447.4(3) provides if relevant part:

(3) ... In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control....

■ The Juvenile Officer concedes that Missouri law dictates that the trial court must either make specific findings on each of the four factors outlined in section 211.447.4(3) or state why a given factor is not relevant to the case before it. *See, e.g., In re T.A.S.,* 32 S.W.3d 804, 810 (Mo. App. W.D.2000); *In Interest of K.T.,* 946 S.W.2d 246, 247 (Mo.App. E.D.1997). Strict and literal compliance with the statutory requirements is necessary in cases involving the termination of parental rights. *In re T.A.S.,* 32 S.W.3d at 810. Father's second point is granted.

The judgment of the trial court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

KATHIANNE KNAUP CRANE, J., and ROBERT G. DOWD, JR., J., Concur.